IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ERIC A. KNAPP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 25-147-CFC |
| | ) | |
| VGW HOLDINGS LIMITED, | ) | |
| VGW LUCKYLAND, INC., | ) | |
| FIDELITY NATIONAL | ) | |
| INFORMATION SERVICES, INC., | ) | |
| WORLDPAY, INC. and | ) | |
| WORLDPAY, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**VGW DEFENDANTS' MEMORANDUM OF LAW**
**<u>IN SUPPORT OF THEIR MOTION TO DISMISS</u>**

OF COUNSEL:
Behnam Dayanim
ORRICK, HERRINGTON
 & SUTCLIFFE LLP
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
(202) 339-8400

Gregory Beaman
ORRICK, HERRINGTON
 & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
(212) 506-5000

Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Virginia K. Lynch (No. 7423)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
arussell@shawkeller.com
glynch@shawkeller.com
*Attorneys for VGW Holdings Limited*
*and VGW Luckyland, Inc.*

Sarah Shyy
ORRICK, HERRINGTON
 & SUTCLIFFE LLP
2050 Main Street
Suite 1100
Irvine, CA 92614-8255
(949) 567-6700

Emma Roche
ORRICK, HERRINGTON
 & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
(650) 614-7400

Dated: June 9, 2025

# **TABLE OF CONTENTS**

NATURE AND STAGE OF THE PROCEEDINGS ...................................................1

SUMMARY OF ARGUMENT ...................................................................................2

STATEMENT OF FACTS ..........................................................................................4

     I.     The Parties ............................................................................................ 4

     II.    The Games ............................................................................................ 5

           A.     The Gold Coin Games ............................................................... 5

           B.     The Sweepstakes Games ........................................................... 5

LEGAL STANDARD ..................................................................................................6

ARGUMENT ...............................................................................................................7

     I.     The Amended Complaint Must Be Dismissed Because Plaintiff Agreed by Contract That His "Entire Relationship" With VGW Is Governed by Delaware Law and Plaintiff Asserts No Claims Under Delaware Law ............................................................................ 7

     II.    Even if Florida Law Applied, Plaintiff Fails to State a Claim ............. 9

           A.     Count I Fails to State a Claim Under Fla. Stat. §§ 849.26-849.34 Because There Is No Private Right of Action Under Chapter 849 ...................................................................... 9

           B.     Count II Fails to State a FDUTPA Claim.................................. 9

           C.     Counts III and V Fail to State a CRCPA Claim ....................... 17

           D.     Count IV Fails to State a Civil Conspiracy Claim .................. 19

CONCLUSION ..........................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)............................................................................6

*Beeney v. FCA US LLC,*
    No. 22-00518-TMH, 2023 WL 6962116 (D. Del. Oct. 20, 2023) ....................14

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)............................................................................6

*Berber v. Wells Fargo Bank, N.A.,*
    No. 16-24918-CIV, 2018 WL 10436236 (S.D. Fla. May 24, 2018) .................18

*Buck v. Hampton Twp. School Dist.,*
    452 F.3d 256 (3d Cir. 2006) ................................................................7

*Coface Collections N. Am. Inc. v. Newton,*
    430 F. App'x 162 (3d Cir. 2011) ..........................................................8

*Cold Stone Creamery, Inc. v. Lenora Foods I, LLC,*
    332 F. App'x 565 (11th Cir. 2009) .......................................................13

*Crawley v. Clear Channel Outdoor, Inc.,*
    No. 8:10-cv-01238, 2011 WL 748162 (M.D. Fla. Feb. 24, 2011) .................3, 9

*Dapeer v. Neutrogena Corp.,*
    95 F. Supp. 3d 1366 (S.D. Fla. 2015)...................................................10

*Davis v. S. Bell Tel. & Tel. Co.,*
    No. 89-2839-CIV, 1994 WL 912242 (S.D. Fla. Feb. 1, 1994)..........................18

*Debernardis v. IQ Formulations, LLC,*
    942 F.3d 1076 (11th Cir. 2019) .........................................................16

*DJ Lincoln Enters., Inc. v. Google, LLC,*
    No. 2:20-CV-14159, 2021 WL 184527 (S.D. Fla. Jan. 19, 2021) ...................18

*Feheley v. LAI Games Sales, Inc.,*
    No. 08-23060-CIV, 2009 WL 2474061 (S.D. Fla. Aug. 11, 2009)...................15

*Gomez v. Guthy-Renker, LLC*,
   No. EDCV 14-01425, 2015 WL 4270042 (C.D. Cal. July 13, 2015) ...............19

*Grijalva v. Kevin Mason, P.A.*,
   No. 8:18-cv-02010, 2019 WL 8221076 (C.D. Cal. Dec. 30, 2019) ..................19

*Inetianbor v. Cashcall, Inc.*,
   No. 13-60066-CIV, 2016 WL 4250644 (S.D. Fla. Apr. 5, 2016) .....................18

*J.S. Alberici Constr. Co. v. Mid-West Conveyor Co.*,
   750 A.2d 518 (Del. 2000) ...................................................................................8

*Jubelirer v. MasterCard Int'l, Inc.*,
   68 F. Supp. 2d 1049 (W.D. Wis. 1999) .............................................................19

*Kais v. Mansiana Ocean Residences, LLC*,
   No. 08-21492-CIV, 2009 WL 825763 (S.D. Fla. Mar. 26, 2009).....................14

*Kurimski v. Shell Oil Co.*,
   No. 21-80727-CV, 2022 WL 2913742 (S.D. Fla. June 30, 2022).....................14

*Lorillard Tobacco Co. v. Alexander*,
   123 So. 3d 67 (Fla. 3d DCA 2013)...................................................................20

*Marrache v. Bacardi U.S.A., Inc.*,
   17 F.4th 1084 (11th Cir. 2021) .........................................................................10

*Marty v. Anheuser-Busch Cos., LLC*,
   43 F. Supp. 3d 1333 (S.D. Fla. 2014)................................................................16

*Mora v. VisionWorks of Am., Inc.*,
   No. 8:18-cv-335, 2019 WL 13248146 (M.D. Fla. Oct. 31, 2019) ....................16

*Ohio State Troopers Ass'n, Inc. v. Point Blank Enters., Inc.*,
   347 F. Supp. 3d 1207 (S.D. Fla. 2018)..............................................................17

*OpenGate Cap. Grp. LLC v. Thermo Fisher Sci. Inc.*,
   No. 13-1475-GMS, 2014 WL 3367675 (D. Del. July 8, 2014)...........................8

*Paul v. Deloitte & Touche LLP*,
   C.A. No. 06-225-MPT, 2007 WL 2402987 (D. Del. Aug. 20, 2007) .................8

*Price v. Lakeview Loan Servicing, LLC*,
    No. 2:19-cv-655, 2021 WL 1610097 (M.D. Fla. Apr. 16, 2021) ......................20

*Ramirez v. Kraft Heinz Foods Co.*,
    684 F. Supp. 3d 1253 (S.D. Fla. 2023) ................................................................17

*Rodriguez v. Recovery Performance & Marine, LLC*,
    38 So.3d 178 (Fla. 3d DCA 2010) ......................................................................16

*Rogers v. Nacchio*,
    241 F. App'x 602 (11th Cir. 2007) .....................................................................18

*Seidman v. Snack Factory, LLC*,
    No. 14-62547-CIV, 2015 WL 1411878 (S.D. Fla. Mar. 26, 2015) ....................17

*State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics &
    Neurosurgery, LLC*,
    278 F. Supp. 3d 1307 (S.D. Fla. 2017) ..............................................................10

*State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics &
    Neurosurgery, LLC*,
    315 F. Supp. 3d 1291 .........................................................................................13

*Trabajadores v. Cortez Moreno*,
    237 So.3d 1127 (Fla. 3d DCA 2018) .............................................................4, 20

**Statutes**

Del. Code § 2708(a) ..................................................................................................8

Fla. Stat. § 501.211 ..................................................................................................3

Fla. Stat. § 501.203 ................................................................................................10

Fla. Stat. § 772.103 ................................................................................4, 17, 18, 19

Fla. Stat. § 849.27 ....................................................................................................9

Fla. Stat. § 849.29 ................................................................................................3, 9

Fla. Stat. § 849.34 ....................................................................................................9

Fla. Stat. § 849.094 ..................................................................................10, 11, 12

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)...........................................................................1, 20

Defendants VGW Holdings Ltd. and VGW Luckyland, Inc. (together, "VGW"), respectfully submit this memorandum in support of their motion to dismiss the Amended Complaint (D.I. 58) pursuant to Rule 12(b)(6).

## NATURE AND STAGE OF THE PROCEEDINGS

This is one of ***thirteen*** lawsuits that Plaintiff's counsel has filed against VGW and its affiliates since 2023. In each case, the plaintiff has incorrectly claimed that VGW's play-for-fun, online casino-themed social games are unlawful "gambling" because they also involve a sweepstakes in which players can win money or prizes. The games are not gambling. VGW utilizes sweepstakes games to promote its service, much like many other retail establishments do. VGW's play-for-fun games are always free to play, but players can purchase virtual tokens to enhance their experience. Players who purchase tokens can receive sweepstakes entries as a bonus. Sweepstakes entries are also always available for free and can never be purchased.

In most cases, the plaintiffs have sought to pocket all amounts that everyone in a state spent to purchase virtual tokens, based on a gross distortion of the text and purpose of ancient state gambling loss recovery statutes. Some cases have been brought by companies that were formed for the purpose of bringing the lawsuits and attempting to avoid the arbitration agreement in VGW's Terms of Service (the "Terms"). Other cases, like this one, have been brought as putative class actions by

players who opted out of arbitration, without regard for the class action waiver, choice of law, and forum selection clauses in the Terms. None has succeeded.

Plaintiff's counsel filed this action against VGW and its affiliates, VGW Malta Ltd. and VGW GP Ltd. (collectively, "VGW Group"), in Florida on or about December 1, 2023. D.I. 1-2. Plaintiff alleged that VGW Group's games are unlawful "gambling" under Florida law and asserted individual and putative class claims on behalf of Florida players who made purchases in the games. D.I. 58 ¶¶ 97-164.

On February 6, 2025, the Middle District of Florida (1) transferred the claims against VGW Luckyland and its parent company VGW Holdings to this Court, pursuant to the mandatory Delaware forum selection clause in VGW Luckyland's Terms; and (2) dismissed the claims against VGW Malta and VGW GP pursuant to the mandatory Malta forum selection clause in their terms of service. D.I. 81. As a result, the only remaining claims in this action are Plaintiff's claims against VGW relating to *Luckyland Slots* (the "Games"). The claims concerning VGW Malta's and VGW GP's games, *Chumba Casino* and *Global Poker*, were dismissed.

## SUMMARY OF ARGUMENT

1.    The Amended Complaint asserts claims exclusively under Florida law, but Plaintiff agreed in the Terms—which he accepted as a condition to playing the Games—that his "use of" the Games and his "entire relationship" with VGW shall

be governed by Delaware law. Because Plaintiff does not plead any Delaware law claims, the Amended Complaint fails to state a claim and should be dismissed.

2.      But even if Florida law applied, the Amended Complaint still fails to state a claim. Count I purports to assert a claim under Fla. Stat. §§ 849.26-849.34 for recovery of the money Plaintiff spent to purchase in-game virtual tokens, but the statute does not permit a private right of action. *Crawley v. Clear Channel Outdoor, Inc.*, No. 8:10-cv-01238, 2011 WL 748162, at *2-3 (M.D. Fla. Feb. 24, 2011).

3.      Count II fails to state a claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.211, for four separate and independent reasons. First, Plaintiff exclusively alleges *per se* deceptive acts, but he fails to state a violation of a predicate statute. Second, Plaintiff fails to allege "causation" because he does not allege any facts showing that a reasonable consumer would be deceived by the Games or VGW's advertisements. To the contrary, Plaintiff alleges it is "obvious" from VGW's disclosures on its website and from the face of the Games that players can "win or lose money" if they choose to participate in the Games' sweepstakes. Third, Plaintiff does not allege "actual damages" because he concedes he got what he paid for when he purchased in-game virtual tokens. Finally, Plaintiff's claim for injunctive relief fails for lack of standing, including because he does not allege he intends to play the Games again.

4.  Counts III and V fail to state a claim under the Florida Civil Remedies for Criminal Practices Act ("CRCPA"), Fla. Stat. § 772.103, also known as the Florida civil RICO statute, because Plaintiff fails to allege an "enterprise," which is an indispensable element of a CRCPA claim. Plaintiff alleges that VGW Holdings and its subsidiary, VGW Luckyland, operate the Games as an "enterprise," but a corporate parent and its subsidiary are not an "enterprise" for civil RICO purposes, particularly where, as here, Plaintiff alleges that the parent controls the subsidiary and there is no allegation that they play independent roles in the alleged violations.

5.  Finally, Count IV fails to state a conspiracy claim. Under Florida law, conspiracy is not a "freestanding tort." *Banco de los Trabajadores v. Cortez Moreno*, 237 So.3d 1127, 1136 (Fla. 3d DCA 2018). Rather, Plaintiff must state an underlying tort claim linked to the alleged conspiracy. *Id*. Plaintiff has not done so. Plaintiff also fails to allege an agreement between VGW and its supposed payment processor, Fidelity National Information Services, Inc. ("FIS"), to pursue an unlawful objective. The claim also fails for the additional reasons stated by FIS.

## STATEMENT OF FACTS

### I.    The Parties

VGW specializes in the development and publication of play-for-fun online casino-themed social games, including the Games at issue: *Luckyland Slots*. D.I. 58

¶ 17. VGW Luckyland, a Delaware corporation, owns and operates the Games. *Id*.

¶¶ 4, 17. VGW Holdings is the parent company of VGW Luckyland. *Id*. ¶ 3.

Plaintiff is a Florida resident who alleges that he purchased virtual tokens in the Games between November 17, 2023, and November 29, 2023. *Id*. ¶ 12.

## II.    **The Games**

VGW's Games have two modes, and each mode is played with a specific type of virtual token: Gold Coin Games are played with Gold Coins ("GCs"), and Sweepstakes Games are played with Sweeps Coins ("SCs"). *Id*. ¶ 46.

### A.    **The Gold Coin Games**

The Gold Coin Games are play-for-fun casino-themed social games (also known as "social casino games"). *Id*. ¶ 31. Although they mimic the appearance of traditional casino games (*e.g.*, slots, blackjack), the Gold Coin Games do not award real money. *Id*. ¶ 26. Upon signing up, users are awarded "a bundle of free" GCs. *Id*. ¶ 24. While users can purchase GCs (*id*. ¶ 26), users ***never need to pay for GCs*** (*id*. ¶ 47). Indeed, users are continuously awarded more GCs for free as they play, including through daily log-in bonuses (*id*. ¶ 47), other promotions, and winning spins (*id*. ¶ 60). Plaintiff concedes GCs cannot "be redeemed for money." *Id*. ¶ 26.

### B.    **The Sweepstakes Games**

VGW promotes the Gold Coin Games through its Sweepstakes Games. *Id*. ¶ 31. Users play the Sweepstakes Games with SCs. *Id*. ¶ 32. Users ***cannot purchase***

*SCs*. *Id*. ¶ 63. Instead, users can obtain SCs through free daily log-in bonuses, "no-cost give away contests," or as a bonus when purchasing specially marketed packages of GCs. *Id*. ¶ 66. Users can also obtain SCs for free by sending a postal request to VGW. *Id*. As Plaintiff concedes, **no purchase is necessary to obtain SCs** (*id*.), nor is there any limit to the number of mailed requests that a user can submit (Sweeps Rules § 3.3).[1] SCs can be redeemed for money (D.I. 58 ¶ 31), subject to the minimum and maximum redemption thresholds in the Sweeps Rules. As with any sweepstakes, the sweepstakes entry (SC) is offered as an incentive to purchase the promoted product (GC) and is **always available for free**. *Id*. ¶¶ 53, 66.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This requires "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While the Court is required to accept as true all well-pled factual allegations, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* The Court can "consider documents that are attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to

---

[1] https://luckylandslots.com/sweeps-rules §§ 6.5, 6.7. This Court can consider the Sweeps Rules because Plaintiff refers to the Sweeps Rules and incorporates them by reference in his Amended Complaint (D.I. 58 ¶ 66, 70). *See infra* at 7 (citing case).

judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Twp. School Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

## ARGUMENT

Plaintiff's claims, all of which are asserted under Florida law, must be dismissed because Plaintiff agreed by contract that his "entire relationship" with VGW is governed by Delaware law. *See infra* § I. But even if Florida law applied, Plaintiff's claims fail as a matter of law and must be dismissed. *See infra* § II.

### I.    The Amended Complaint Must Be Dismissed Because Plaintiff Agreed by Contract That His "Entire Relationship" With VGW Is Governed by <u>Delaware Law and Plaintiff Asserts No Claims Under Delaware Law</u>

As a condition to registering an account and playing the Games, Plaintiff was required to—and did—accept the Terms in effect in November 2023. D.I. 81 at 2-3. Indeed, Plaintiff concedes that he accepted the Terms because he alleges that he "opted out" of arbitration "in accordance with the Terms." D.I. 58 ¶ 13. During the relevant period, the Terms contained a Delaware choice-of-law clause, which states that Plaintiff's "use of the" Games and his "entire relationship" with VGW "will be governed and interpreted in accordance with the laws of the State of Delaware . . ., without regard for its [] conflict of law principles." D.I. 61-1, Exhibit A § 24.14.

"Delaware courts will generally honor a contractually-designated choice of law provision so long as the jurisdiction selected bears some material relationship to the transaction." *J.S. Alberici Constr. Co. v. Mid-West Conveyor Co.*, 750 A.2d 518,

520 (Del. 2000). Under Delaware law, the existence of a Delaware choice-of-law clause "shall conclusively be presumed to be a significant, material and reasonable relationship with this State and shall be enforced whether or not there are other relationships with this State." 6 Del. Code § 2708(a). Moreover, VGW Luckyland is incorporated in Delaware, which independently "provides an adequate substantial relationship with the state of Delaware." *Coface Collections N. Am. Inc. v. Newton*, 430 F. App'x 162, 167-68 (3d Cir. 2011) (enforcing Delaware choice-of-law clause because defendant "was incorporated under Delaware law and does business nationally, and because, pursuant to § 2708, Delaware is presumed to have a significant interest in enforcing choice-of-law clauses that choose Delaware law").

Because Plaintiff agreed that his "use of the [Games]" and his "entire relationship" with VGW "will be governed" exclusively by Delaware law, the Amended Complaint—which asserts only Florida-law claims—must be dismissed. *See*, *e.g.*, *Paul v. Deloitte & Touche LLP*, C.A. No. 06-225-MPT, 2007 WL 2402987, at *4 (D. Del. Aug. 20, 2007) (dismissing Massachusetts statutory tort claim because parties' contract contained Delaware choice-of-law clause); *OpenGate Cap. Grp. LLC v. Thermo Fisher Sci. Inc.*, No. 13-1475-GMS, 2014 WL 3367675, at *14 (D. Del. July 8, 2014) (dismissing California statutory tort claim because plaintiff "waived its right to sue [defendant] under California law when it agreed to adjudicate disputes with [defendant] under Delaware law").

II.    **Even if Florida Law Applied, Plaintiff Fails to State a Claim**

    A.    **Count I Fails to State a Claim Under Fla. Stat. §§ 849.26-849.34 Because There Is No Private Right of Action Under Chapter 849**

Count I purports to assert a claim under Chapter 849 of the Florida Statutes. (D.I. 58 ¶¶ 97-116), but there is ***no private right of action under Chapter 849***. *Crawley*, 2011 WL 748162, at *2-3. In *Crawley*, plaintiffs who lost money gambling at Florida casinos claimed they were entitled to recover their losses under §§ 849.29 and 849.34. *Id*. at *1. The court dismissed the claims with prejudice because "[t]here fails to exist a statute within Chapter 849 that creates a cause of action and authorizes a particular suit." *Id*. at *2. The court explained that § 849.27, which once authorized suits by private plaintiffs, was "repealed by the Florida Legislature" in 1974 and, as a result, the private right of action "vanished." *Id.* (citing *Bureau of Crimes Comp. v. Williams*, 405 So.2d 747, 748 (Fla. 2d DCA 1981) ("[W]hen the legislature repeals a statute, the right or remedy created by the statute falls with it.")). As "the statute giving rise to a cause of action" under Chapter 849 "has been repealed," Plaintiff does not and cannot state a claim under §§ 849.26-849.34 because such claims "are no longer authorized under Florida law." *Id*. Count I should be dismissed.

    B.    **Count II Fails to State a FDUTPA Claim**

To state a claim under the FDUTPA, Plaintiff must allege "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1097 (11th Cir. 2021). To state a claim for injunctive

relief, Plaintiff must also "allege a threat of future harm." *Dapeer v. Neutrogena Corp.*, 95 F. Supp. 3d 1366, 1373 (S.D. Fla. 2015). Plaintiff fails to state a claim.

## 1.    <u>Plaintiff Fails to State a Deceptive Act or Unfair Practice</u>

The first element of a FDUTPA claim—a deceptive act or unfair practice—"may be satisfied in one of two ways: a *per se* violation or a traditional violation." *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1326 (S.D. Fla. 2017). To plead a *per se* violation, the plaintiff must allege a violation of a predicate statute. *See* Fla. Stat. § 501.203(3)(c).

Plaintiff purports to allege a *per se* deceptive act or unfair practice based on VGW's alleged violations of §§ 849.094(2)(b)-(e) and 849.094(3). D.I. 58 ¶¶ 120-21. Those statutes permit the offering of "game promotions," including sweepstakes, in Florida so long as the sweepstakes comply with the statutes' requirements. *See* Fla. Stat. §§ 849.094(2)-(3). Plaintiff has not alleged a violation of the statutes.

***First***, Plaintiff has not alleged a violation of §§ 849.094(2)(b) or (c). Under those statutes, a sweepstakes operator cannot "arbitrarily [] remove, disqualify, disallow, or reject any entry" (§ 849.094(2)(b)), nor can the operator "fail to award prizes offered" (§ 849.094(2)(c)). Plaintiff baldly asserts that VGW violates these statutes (D.I. 58 ¶¶ 120(a)-(b)), but he does not allege that VGW arbitrarily removes, disqualifies, disallows or rejects qualifying redemptions of SCs, nor does he allege that VGW fails to award SCs to players who meet the requirements for their award.

***Second***, Plaintiff has not alleged a violation of § 849.094(2)(d), which makes it unlawful for an operator "[t]o print, publish, or circulate literature or advertising material used in connection with such game promotions which is false, deceptive, or misleading." Plaintiff's theory appears to be that VGW falsely advertises its Games as "arcade game websites permitting just for fun gameplay" when, in fact, users "can wager and lose real money." D.I. 58 ¶ 19. But Plaintiff concedes that users can play the Games, including the Sweepstakes Games, ***without ever spending any money***. *Id*. ¶¶ 26, 47, 60. Plaintiff also alleges it is obvious from the face of the Games and VGW's advertisements (*id*. ¶¶ 43-55) that users can "win or lose real money" playing the Sweepstakes Games (*id*. ¶ 27). And while Plaintiff alleges that VGW falsely advertises and states in the Terms that the Games are "legal" in Florida (*id*. ¶ 81), he does not identify a single advertisement or statement in the Terms making that representation. Nor does Plaintiff allege that any Florida court, regulator, or other authority has ever found the Games unlawful (none has). To be clear, players do not "wager" money on the Games, nor are the Games unlawful "gambling." Users can play the Sweepstakes Games with SCs, which cannot be purchased and are always available for free, and they can redeem their sweepstakes entries (SCs) for money or prizes. But even accepting Plaintiff's allegations as true for this motion, Plaintiff has not alleged a false, deceptive, or misleading advertisement concerning the Games.

***Third***, Plaintiff has not alleged a violation of § 849.094(2)(e), which prohibits operators from "requir[ing] an entry fee, payment, or proof of purchase as a condition of entering a game promotion." Plaintiff concedes that users can obtain SCs ***without making any purchases of GCs***, including through free daily log-in bonuses, by entering "no-cost give away contests," and "[b]y sending a request by mail" to VGW. D.I. 58 ¶ 66. Accordingly, because Plaintiff concedes that VGW does not require an entry fee, payment, or proof of purchase as a condition to obtaining SCs, Plaintiff does not and cannot allege a violation of § 849.094(2)(e).

***Finally***, Plaintiff does not allege a violation of § 849.094(3). Under that statute, an "operator of a game promotion in which the total announced value of the prizes offered is greater than $5,000" must file "a copy of the rules and regulations of the game promotion and a list of all prizes and prize categories offered" with the Department of Agriculture and Consumer Services. Plaintiff alleges that VGW did not make this required filing (D.I. 58 ¶ 121), but the statute does not apply here because, as the Sweeps Rules state, a Florida player who elects to redeem SCs cannot redeem more than $5,000 attributable to a win in a single play (Sweeps Rules § 6.7).

Because Plaintiff fails to allege a *per se* violation, his claim must be dismissed.

### 2.     <u>Plaintiff Fails to State Causation or Actual Damages</u>

Even assuming Plaintiff had alleged a *per se* violation, he fails to allege the other two essential elements of a FDUTPA claim: "causation" and "actual damages."

*State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 315 F. Supp. 3d 1291, 1306 (S.D. Fla. 2018) ("[E]ven if a statute is a *per se* FDUTPA predicate, a plaintiff must allege causation and damages.").

### a.  <u>Plaintiff Fails to Allege Causation</u>

To state the causation element under the FDUTPA, the plaintiff must allege facts that, if proven, would establish that "the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances." *Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*, 332 F. App'x 565, 567 (11th Cir. 2009).

The gravamen of Plaintiff's claim is that VGW markets the Games as legal and "just for fun" even though the Games allegedly are unlawful "gambling" in which players can "wager and lose real money." D.I. 58 ¶¶ 19, 81. But, as discussed above, Plaintiff concedes that users can play the Games ***without ever spending any money***. He also alleges that it is obvious that users can "win or lose real money" in the Sweepstakes Games. *Id.* ¶¶ 27, 43-55. Plaintiff further alleges that the Games are "obvious gambling" on their face. *Id.* ¶¶ 44, 43-55, 60. Moreover, Plaintiff filed a declaration in this case in which he swore he that "could easily see" that if he played the Sweepstakes Games, he "had the chance of winning" or "losing" SCs (D.I. 67-3 ¶ 13) and "could redeem SC for prizes, in the form of cash or money" (*id.* ¶ 14). Plaintiff also swore that, based on "the nature of the [Games]" and VGW's

disclosures on its website regarding the Sweepstakes Games, he "knew that this was gambling" (*id*. ¶ 15) and "continued to wager SC" with that knowledge (*id*. ¶ 16).

VGW denies that its Games are "gambling," but even accepting Plaintiff's allegations as true, they fail to demonstrate that a reasonable consumer would be deceived by the Games or VGW's advertisements, which, according to Plaintiff, disclose how the Games work. *See Kurimski v. Shell Oil Co.*, No. 21-80727-CV, 2022 WL 2913742, at *10 (S.D. Fla. June 30, 2022) (dismissing FDUTPA claim for failure to allege causation because "[r]easonable consumers generally do not choose to ignore accurate . . . information displayed conspicuously during the transaction").

Even if Plaintiff had alleged a false or misleading advertisement, Plaintiff does not allege that he or a reasonable consumer would have spent less money purchasing GCs or declined to purchase them had they known they allegedly could win or lose "real money" playing the sweepstakes with SCs (D.I. 58 ¶ 19). *See Beeney v. FCA US LLC*, No. 22-00518-TMH, 2023 WL 6962116, at *7 (D. Del. Oct. 20, 2023) (FDUTPA plaintiffs failed to allege deceptive practices "caused [them] to pay more than they otherwise would have paid" for product); *Kais v. Mansiana Ocean Residences, LLC*, No. 08-21492-CIV, 2009 WL 825763, at *2 (S.D. Fla. Mar. 26, 2009) (dismissing FDUTPA claim because plaintiff did not "state that [the] alleged deceptive acts caused him to enter into the contract with [d]efendant or caused him

to act differently"). To the contrary, Plaintiff alleges that users purchase GCs for the purpose of obtaining SCs and the chance to redeem SCs for money. D.I. 58 ¶ 26, 50.

The court's decision in *Feheley v. LAI Games Sales, Inc*., No. 08-23060-CIV, 2009 WL 2474061 (S.D. Fla. Aug. 11, 2009), is instructive. There, the plaintiff alleged that the defendant offered "a gambling game" that "masquerades as an arcade-style game," in violation of the FDUTPA. *Id*. at *1. The plaintiff alleged that the game, which users paid to play for the chance to win prizes, was "'no different than a slot machine.'" *Id*. at *1 & n.2. The court held that the claim failed because:

> No "reasonable consumer" is likely to be deceived that [the game] is a game entirely of skill, and not of chance. Any computerized video game, even one which hands out prizes to consumers for completing certain tasks or advancing to certain "levels" within the confines of the game, necessarily involves programming and some form of pre-determined odds . . . . [Plaintiff] simply finds it unfair that the game is designed to make money.

*Id*. at *5. So, too, here. Plaintiff's claim should be dismissed.

### b.    Plaintiff Has Failed to Allege "Actual Damages"

"In the context of FDUTPA, 'actual damages' are defined as 'the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties.'" *Rodriguez v. Recovery Performance & Marine, LLC*, 38 So.3d 178, 180 (Fla. 3d DCA 2010); *see also Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1084 (11th Cir. 2019) ("A person experiences

an economic injury when, as a result of a deceptive act or an unfair practice, he is deprived of the benefit of his bargain."); *Mora v. VisionWorks of Am., Inc.*, No. 8:18-cv-335, 2019 WL 13248146, at *4 (M.D. Fla. Oct. 31, 2019) ("[A] plaintiff bringing a [FDUTPA] action must show that what she got is worth less than she paid.").

Here, Plaintiff does not allege "actual damages" because, according to his allegations, he got exactly what he paid for: GCs to play the Gold Coin Games. He also received, as advertised, the promised allotment of free SCs to play the Sweepstakes Games. D.I. 58 ¶ 12. Indeed, Plaintiff admitted in his declaration: "[W]hen I purchased [GCs] I received an amount of [SCs] . . . that were equal to or greater than the amount of money that I paid for [GCs]." D.I. 67-3 ¶ 3. By Plaintiff's admission, he suffered no "actual damages." Therefore, his claim must be dismissed.

### 3. <u>Plaintiff Fails to State a Claim for Injunctive Relief</u>

Even if Plaintiff had stated a claim for damages, his claim for injunctive relief must be dismissed for lack of standing. This is true for at least two reasons.

*First*, Plaintiff does not allege that he still plays the Games, nor does he allege that he intends to play them in the future. *See Marty v. Anheuser-Busch Cos., LLC*, 43 F. Supp. 3d 1333, 1354 (S.D. Fla. 2014) (plaintiffs lacked standing for injunctive relief under FDUTPA where they did not allege they "would purchase [the product] in the future"); *Ohio State Troopers Ass'n, Inc. v. Point Blank Enters., Inc*., 347 F. Supp. 3d 1207, 1227 (S.D. Fla. 2018) (plaintiff lacked standing to seek injunctive

16

relief absent an allegation that plaintiffs "***continue to***" use the products) (emphasis in original); *Seidman v. Snack Factory, LLC*, No. 14-62547-CIV, 2015 WL 1411878, at *5 (S.D. Fla. Mar. 26, 2015) ("[P]laintiff lacks standing to pursue the requested injunctive relief because he has not alleged intent to purchase [the products] in the future."). In fact, Plaintiff swore in his declaration that he "decided to stop playing the games" when he did not win in the Sweepstakes Games. D.I. 67-3 ¶ 18.

***Second***, even if Plaintiff had alleged an intent to continue playing the Games, any "injury" would be self-inflicted because he alleges (and swore in his declaration) that he knows the Games are unlawful "gambling." D.I. 58 ¶¶ 3, 13, 21, 81; D.I. 67-3 ¶ 13. Plaintiff is wrong, but his allegations establish that he "cannot be deceived" in the future, and thus he lacks standing to seek injunctive relief under the FDUTPA. *Ramirez v. Kraft Heinz Foods Co.*, 684 F. Supp. 3d 1253, 1260-61 (S.D. Fla. 2023).

### C.    Counts III and V Fail to State a CRCPA Claim

To state a claim under the CRCPA (also known as Florida civil RICO), a plaintiff must allege, among other things, a criminal "enterprise." Fla. Stat. § 772.103. "Because § 772.103 is patterned after the federal RICO statute, the Florida courts have looked to decisions interpreting the federal statute in interpreting § 772.103." *Rogers v. Nacchio*, 241 F. App'x 602, 607 (11th Cir. 2007) (citing cases).

Plaintiff alleges that VGW Holdings and its subsidiary VGW Luckyland operate the Games as an "enterprise" (D.I. 58 ¶ 136), but "a parent company and its

subsidiaries cannot form an 'enterprise' for RICO purposes unless there is some suggestion that the vehicle of corporate separateness was deliberately used to facilitate unlawful activity." *Berber v. Wells Fargo Bank, N.A.*, No. 16-24918-CIV, 2018 WL 10436236, at \*4 (S.D. Fla. May 24, 2018); *see also DJ Lincoln Enters., Inc. v. Google, LLC*, No. 2:20-CV-14159, 2021 WL 184527, at \*3 (S.D. Fla. Jan. 19, 2021) (dismissing CRCPA claim because plaintiff "has not alleged any facts to support a conclusion that these related corporate entities are distinct for RICO purposes, rather than one corporate 'person'"); *Davis v. S. Bell Tel. & Tel. Co.*, No. 89-2839-CIV, 1994 WL 912242, at \*22 (S.D. Fla. Feb. 1, 1994) (same).

Plaintiff does not allege that VGW Luckyland and VGW Holdings play distinct roles in the alleged violations of Florida law, much less that they deliberately used their separate incorporation to facilitate the alleged violations. To the contrary, Plaintiff alleges that VGW Holdings "fully controls and operates its subsidiary" VGW Luckyland as its "agent[] or alter ego." D.I. 58 ¶¶ 3, 17. Plaintiff thus fails to allege an "enterprise" under the CRCPA. *Inetianbor v. Cashcall, Inc.*, No. 13-60066-CIV, 2016 WL 4250644, at \*6 (S.D. Fla. Apr. 5, 2016) (dismissing CRCPA claim where plaintiff alleged defendant "controlled and supported" subsidiary engaged in violations, and defendant "cannot engage in an illegal enterprise with itself").

To the extent Plaintiff claims that VGW's relationship with its alleged payment processor FIS constitutes an "enterprise" for Florida civil RICO purposes,

"[t]he consensus among courts" is that "a routine contractual relationship for services," including payment processing services, does not and cannot constitute "an independent enterprise." *Gomez v. Guthy-Renker, LLC*, No. EDCV 14-01425, 2015 WL 4270042, at *11 (C.D. Cal. July 13, 2015) (dismissing civil RICO claim because defendant and its "payment processors" were not an "enterprise") (citing cases); *see also Jubelirer v. MasterCard Int'l, Inc.*, 68 F. Supp. 2d 1049, 1054 (W.D. Wis. 1999) (dismissing gambler's civil RICO claims against credit card company after gambler lost money at online casino because relationship between credit card company and bank was not an "enterprise"); *Grijalva v. Kevin Mason, P.A.*, No. 8:18-cv-02010, 2019 WL 8221076, at *3 (C.D. Cal. Dec. 30, 2019) (dismissing civil RICO claim premised on relationship between defendant and payment processor).

Therefore, Counts III and V should be dismissed with prejudice.[2]

### D.    <u>Count IV Fails to State a Civil Conspiracy Claim</u>

"Florida does not recognize civil conspiracy as a freestanding tort." *Banco*, 237 So.3d at 1136. To state a claim, a plaintiff must plead facts that, if proven, would establish a predicate tort linked to the civil conspiracy claim. *Lorillard Tobacco Co. v. Alexander*, 123 So. 3d 67, 80 (Fla. 3d DCA 2013). Plaintiff fails to state a claim for an underlying tort, and thus he fails to state a conspiracy claim. Moreover,

---

[2] VGW denies that Plaintiff has pled any of the other elements of a CRCPA claim, but focuses in this motion on Plaintiff's failure to allege an "enterprise" since the Court need look no further to dismiss Counts III and V.

Plaintiff fails to allege any facts that would establish an agreement between VGW and FIS to pursue an unlawful objective. *Price v. Lakeview Loan Servicing, LLC*, No. 2:19-cv-655, 2021 WL 1610097, at *12 (M.D. Fla. Apr. 16, 2021) (dismissing conspiracy claim where "[p]laintiff has failed to allege the existence of an agreement between Defendant and LoanCare to engage in unlawful conduct").

Plaintiff also fails to state a conspiracy claim for the reasons stated in FIS's motion to dismiss, which VGW hereby incorporates by reference.

## <u>CONCLUSION</u>

For the reasons set forth above, this Court should dismiss the Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6).

/s/ Virginia K. Lynch
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Virginia K. Lynch (No. 7423)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
arussell@shawkeller.com
glynch@shawkeller.com
*Attorneys for VGW Holdings Limited
and VGW Luckyland, Inc.*

OF COUNSEL:
Behnam Dayanim
ORRICK, HERRINGTON
  & SUTCLIFFE LLP
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
(202) 339-8400

Gregory Beaman
ORRICK, HERRINGTON
  & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
(212) 506-5000

Sarah Shyy
ORRICK, HERRINGTON
  & SUTCLIFFE LLP
2050 Main Street
Suite 1100
Irvine, CA 92614-8255
(949) 567-6700

Emma Roche
ORRICK, HERRINGTON
  & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
(650) 614-7400

Dated: June 9, 2025